UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GASPAR AVENDAÑO HERNANDEZ,
                Petitioner,

-v-

THOMAS DECKER et al.,
                Respondents.

20-CV-1589 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In this action, a petition for a writ of habeas corpus under 28 U.S.C. § 2241, Gaspar Avendaño Hernandez seeks relief from his detention by U.S. Immigration and Customs Enforcement. Avendaño Hernandez has filed a letter motion to compel Respondents to release him pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). (Dkt. No. 9.) For the reasons that follow, the motion is granted.

**I.    Background**

The following facts are taken from the petition for writ of habeas corpus, as amended, and are essentially undisputed for purposes of this motion. (*See* Dkt. No. 12 ("Pet.").)

Petitioner Gaspar Avendaño Hernandez is a resident of Brooklyn, New York. (Pet. ¶ 1.) On February 6, 2020, he was arrested by U.S. Immigration and Customs Enforcement, or ICE, and detained at the Hudson County Correction Facility. (Pet. ¶¶ 15, 45.) On February 24, 2020, Petitioner filed a habeas petition asserting four claims — including, most relevantly, a claim that he is being denied adequate medical care. (Dkt. No. 1 ¶ 110–15.) On March 30, 2020, Petitioner filed an amended habeas petition asserting the same claim in the renewed context of the COVID-19 epidemic. (*See* Pet. ¶¶ 119–26)

1

Petitioner suffers from several severe medical conditions. During Petitioner's arrest, ICE officers tased Petitioner between fifteen and twenty times in the legs and back. (Pet. ¶¶ 18–19.) He subsequently received medical treatment at Maimonides Medical Center, at which he was diagnosed with a right bundle branch block, or "an interruption or alteration of the electrical conduction of the heart." (Pet. ¶ 33.) He was also diagnosed with rhabdomyolysis, "a condition in which breakdown of muscle fiber release[s] protein into the blood," potentially resulting in "damage to the kidneys, dangerous electrolyte abnormalities, [or] death." (Pet. ¶ 34.) Petitioner was instructed to obtain "follow-up care with a cardiac specialist," including "an echocardiogram and electrocardiogram." (Pet. ¶ 121.) Petitioner has not yet received this follow-up care during his detention at Hudson County Correction Facility. (Pet. ¶ 122.)

On March 22, 2020, the first case of COVID-19 was reported at Hudson County Correction Facility. (Pet. ¶ 90.) Petitioner faces an increased risk of death from COVID-19 due to his underlying medical conditions. (Pet. ¶¶ 94, 97.) Hudson County Correction Facility has implemented some measures to slow the spread of COVID-19 in the facility (Dkt. No. 11 at 4); however, "[s]ocial distancing is impossible." (Pet. ¶ 92.)

On March 23, 2020, Petitioner filed a motion seeking interim release pending disposition of the habeas petition under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). The motion argues that Petitioner is "particularly vulnerable to COVID-19" and that the Hudson County Correction Facility cannot "respond adequately" to the health risks posed by the disease. (Dkt. No. 9 at 1–3.)

## II. Legal Standard

"[T]he federal courts have inherent authority to admit to bail individuals properly within their jurisdiction." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001). This power "is a limited one, to be exercised in special cases only." *Id.* To obtain relief, "[t]he petitioner must

2

demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective." *Id.* (second alteration in original) (quoting *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990)).

## III. Discussion

To obtain interim release under *Mapp v. Reno*, Petitioner must demonstrate both that his petition raises "substantial" claims and that "extraordinary circumstances" exist. Each requirement is discussed in turn.

### A. Substantial Claims

Among other claims, the petition for a writ of habeas corpus asserts a claim of deliberate indifferent to Petitioner's medical needs while in detention. (Pet. ¶¶ 119–26.) Civil detainees enjoy the right to be free from deliberate indifference to their serious medical needs. *See Charles v. Orange County*, 925 F.3d 73, 85–86 (2d Cir. 2019). For federal detainees, the relevant guarantee is the Fifth Amendment's Due Process Clause. *See id.* That guarantee encompasses the rights of Petitioner, as the Due Process Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Deliberate indifference requires a two-part showing. First, Petitioner must establish that he has a serious, unmet medical need. *See Charles*, 925 F.3d at 86. Second, Petitioner must establish that Respondents acted with deliberate indifference to that need.

Here, the first requirement is easily established. A serious medical need is one that "may produce death, degeneration, or extreme pain." *Id.* (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Petitioner's rhabdomyolysis, if left untreated, "can lead to kidney damage and death." (Pet. ¶ 121.) Relatedly, Petitioner was also diagnosed with an abnormality in his cardiac electrical conduction. (*Id.*) Standing alone, these conditions already present a risk of

3

"death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (quoting *Hathaway*, 99 F.3d at 553). But in the context of the COVID-19 epidemic, these conditions render Petitioner peculiarly at risk of serious injury or death in the event he contracts COVID-19. (Pet. ¶ 97; *see also* Dkt. No. 12-2 at 16 (enumerating "high-risk" categories for COVID-19).) Notably, Respondents do not appear to dispute that Petitioner's medical conditions place him in a high-risk category for experiencing serious injury or death from COVID-19. (Dkt. No. 11 at 4.)

Furthermore, Petitioner's medical need remains unmet. The record indicates that Respondents have not taken any action to address the particular risks that COVID-19 poses to high-risk individuals like Petitioner. Rather, Respondents cite only generalized "proactive measures to prevent detainees within its care from contracting and spreading the virus," including

> modifying the intake process for all incoming detainees and pre-screening of all newly admitted detainees prior to admission to the facility . . . ; suspending all contact and non-contact visits at the jail; dramatically increasing sanitation frequency in housing units at the jail; and screening of all employees and vendors who enter the jail.

(Dkt. No. 11 at 4.) These measures, however, are unresponsive to Petitioner's specific medical need — the risk posed by COVID-19 to high-risk individuals in particular. *See, e.g.*, *Coronel v. Decker*, No. 20-CV-2472, 2020 WL 1487274, at *5 (S.D.N.Y. Mar. 27, 2020) ("[The government] has not isolated these high-risk individuals. It has not created special safety or hygiene protocols for them or for staff interacting with them to follow. . . . And of course, it has not released [Petitioner], even though doing so is within the agency's sound discretion."). Thus, Petitioner has met the first requirement to state a claim for deliberate indifference.

The second requirement is also met. To establish that Respondents acted with deliberate indifference, Petitioner "can allege either that [they] *knew*" or that they "*should have known*" that

failing to provide the complained of medical treatment would pose a substantial risk to his health." *Charles*, 925 F.3d at 87. As an initial matter, Petitioner has established that Respondents had actual knowledge of his serious, unmet medical condition. On March 24, 2020, Petitioner submitted a letter to ICE detailing his medical needs and asserting, in particular, his heightened risk for serious harm or death from COVID-19 due to his underlying heart conditions. (Dkt. No. 12-2 at 59.) Respondents are therefore aware of Petitioner's medical condition and the particularized risk posed to them by COVID-19.

Despite this knowledge, Respondents "can point to *no specific action* that [they have taken] in direct response to this serious, unmet medical need." *Coronel*, 2020 WL 1487274, at *5. Respondents cite "proactive measures" like modification of the intake process and increasing sanitation frequency. (Dkt. No. 11 at 4.) But even if such measures sufficed to meet the medical needs of ordinary detainees, those measures "do nothing to alleviate the *specific*, *serious*, and *unmet* medical needs of . . . high-risk [detainees]." *Coronel*, 2020 WL 1487274, at *5; *see Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) (holding that even if a policy were "generally justifiable . . . the application of the policy in [a particular] case could . . . amount[] to deliberate indifference"). Nor is it clear that these measures are "generally justifiable." As courts in this Circuit have concluded, such measures are "patently insufficient" to protect *any* detainees from infection absent "enforcement of requisite social distancing." *Basank v. Decker*, No. 20-CV-2518, 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020); *see also Coronel*, 2020 WL 1487274, at *5 (noting that "[n]one of these steps are adequate to mitigate the transmission of the virus when there's already documented community-based transmission, and spread of coronavirus from staff, vendors, or contractors" (alteration in original)).

5

In short, Respondents had actual knowledge of Petitioner's serious, unmet medical need and did nothing in response. The Court concludes that such facts state a substantial claim for deliberate indifference. *See Coronel*, 2020 WL 1487274, at *6 (concluding petitioners were likely to succeed on deliberate-indifference claim because the government failed to "introduce[] any evidence of actions it took in response to the particular risk COVID-19 poses to high-risk individuals like the Petitioners"); *Basank*, 2020 WL 1481503, at *5 (concluding petitioners were likely to succeed on deliberate-indifference-claim because the government "could [not] provide the Court with any information about steps taken to protect high-risk detainees like Petitioners").

### B. Extraordinary Circumstances

Release under *Mapp* is appropriate only if "extraordinary circumstances . . . make [immediately release] necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 230 (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981). "Severe health issues" are "the prototypical . . . case of extraordinary circumstances that justify release pending adjudication of habeas." *Coronel*, 2020 WL 1487274, at *9. Such is the case here. Petitioner argues that he is being subject to unconstitutional conditions of confinement — specifically, continued risk of exposure to COVID-19 — and he seeks release so that he can avoid infection. "If Petitioner[] were to remain detained, [he] would face a significant risk that [he] would contract COVID-19 — the very outcome [he] seek[s] to avoid." *Id.* Accordingly, immediate release is necessary to "make the habeas remedy effective." *Mapp*, 241 F.3d at 230 (quoting *Iuteri*, 662 F.2d at 161).

## IV. Conclusion

For the foregoing reasons, Petitioner's motion to compel immediate release pending resolution of his habeas petition is GRANTED. The Court hereby orders Respondents to immediately release Petitioner on reasonable conditions. The parties are ordered to meet and confer and to propose reasonable bond conditions no later than April 1, 2020, at 1:00 p.m.

The Clerk of Court is directed to close the motion at Docket Number 9.

SO ORDERED.

Dated: April 1, 2020
       New York, New York

                                                J. PAUL OETKEN
                                        United States District Judge